**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL MAY a.k.a. FLOURGON,<br><br>             Plaintiff,<br><br><br>        **-against-**<br><br><br>SONY MUSIC ENTERTAINMENT; DESTINY HOPE CYRUS a.k.a. MILEY RAY CYRUS; SMILEY MILEY, INC.; THERON THOMAS; TIMOTHY TOMAS; MICHAEL LEN WILLIAMS II a.k.a. MIKE WILL MADE IT/ MIKE WILL; and LARRY RUDOLPH,<br><br>           Defendants. | Case No. 1:18-cv-02238 (LAK) (RWL)<br><br>Hon. Robert W. Lehrburger |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION**
**TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

FACTUAL BACKGROUND ...................................................................................................... 2

    A.    Plaintiff's Alleged Copyright Interest.................................................................. 2

    B.    Defendants' Song................................................................................................. 3

    C.    Plaintiff's Second Amended Complaint .............................................................. 3

I. THE STANDARD ON THIS MOTION ................................................................................... 4

II. ARGUMENT ......................................................................................................................... 6

    A.    Short Phrases Such as the One Plaintiff Claims to Have Adapted Are Not
          Protectable as a Matter of Copyright Law ........................................................... 6

    B.    Assuming Plaintiff Has Any Protection for the Phrase, It Extends Only to
          His Exceedingly Limited Original Contribution to It ........................................... 9

    C.    Assuming *Arguendo* Substantial Similarity of Protectable Expression,
          Defendants' Use is a Fair Use ............................................................................. 14

          1.    The Purpose and Character of Defendants' Use ...................................... 14

          2.    The Nature of Plaintiff's Original Work................................................... 17

          3.    The Amount and Substantiality of Defendants' Use ............................... 18

          4.    The Effect on the Market for Plaintiff's Song ........................................ 18

    D.    If This Action Survives, Plaintiff is not Entitled to Statutory Damages or
          Attorney's Fees, and Any Actual Damages Are Limited to the Three Year
          Statute of Limitations Period .............................................................................. 20

CONCLUSION................................................................................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abilene Music, Inc. v. Sony Music Entm't, Inc.*,
    320 F. Supp. 2d 84 (S.D.N.Y. 2003)......................................................................................19

*Acuff-Rose Music, Inc. v. Jostens, Inc.*,
    988 F. Supp. 289 (S.D.N.Y. 1997) .....................................................................................13

*Alfred Bell & Co. v. Catalda Fine Arts, Inc.*,
    191 F.2d 99 (2d Cir. 1951)................................................................................................11

*Arrow Prods., LTD. v. Weinstein Co.*,
    44 F. Supp. 3d 359 (S.D.N.Y. 2014)...................................................................................5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................................................................4

*Barcroft Media, Ltd. v. Coed Media Grp., LLC*,
    297 F. Supp. 3d 339 (S.D.N.Y. 2017).................................................................................17

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................................................................4

*Bell v. Blaze Magazine*,
    No. 99 CIV. 12342(RCC), 2001 WL 262718 (S.D.N.Y. Mar. 16, 2001).............................8, 9

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
    448 F.3d 605 (2d Cir. 2006)...............................................................................................17

*Blanch v. Koons*,
    467 F.3d 244 (2d Cir. 2006)...........................................................................................16, 17

*Boarding Sch. Review, LLC v. Delta Career Educ. Corp.*,
    No. 11 Civ. 8921(DAB), 2013 WL 6670584 (S.D.N.Y. Mar. 29, 2013) .................................5

*Boisson v. Banian, Ltd.*,
    273 F.3d 262 (2d Cir. 2001)...........................................................................................6, 9, 12

*Boone v. Jackson*,
    206 F. App'x 30 (2d Cir. 2006) .........................................................................................8, 9

*Boyle v. Stephens, Inc.*,
   No. 97 CIV. 1351(SAS), 1998 WL 80175 (S.D.N.Y. Feb. 25, 1998),
   *aff'd*, 1998 WL 690816 (S.D.N.Y. Sept. 29, 1998) .................................................................8

*Bridgeport Music, Inc. v. Dimension Films*,
   410 F.3d 792 (6th Cir. 2005) .............................................................................................13

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994).................................................................................14, 15, 17, 19

*Cariou v. Prince*,
   714 F.3d 694 (2d Cir. 2013)........................................................................ *passim*

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*,
   982 F.2d 693 (2d Cir. 1992)...............................................................................................9

*Edwards v. Raymond*,
   22 F. Supp. 3d 293 (S.D.N.Y. 2014)...............................................................................8

*Effie Film, LLC v. Murphy*,
   932 F. Supp. 2d 538 (S.D.N.Y. 2013), *aff'd*, 564 F. App'x 631 (2d Cir. 2014).......................4

*Estate of Smith v. Cash Money Records, Inc.*,
   253 F. Supp. 3d 737 (S.D.N.Y. 2017)...........................................................................16, 17

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991).............................................................................................6, 9

*Fischer v. Forrest*,
   No. 14 Civ. 1304(PAE)(AJP), 2017 WL 128705 (S.D.N.Y. Jan. 13, 2017),
   *report and recommendation adopted*, No. 14 Civ. 1304(PAE)(AJP),
   2017 WL 1063464 (S.D.N.Y. Mar. 21, 2017) .................................................................21

*Folio Impressions, Inc. v. Byer Cal.*,
   937 F.3d 759 (2d Cir. 1991)...........................................................................................12

*Fulks v. Knowles-Carter*,
   207 F. Supp. 3d 274 (S.D.N.Y. 2016)...............................................................................4

*Goodman v. Universal Beauty Prods. Inc.*,
   No. 17-cv-1716(KBF), 2018 WL 1274855 (S.D.N.Y. Mar. 9, 2018) .............................20, 21

*Gracen v. Bradford Exchange*,
   698 F.2d 300 (7th Cir. 1983) .........................................................................................12

*Hoehling v. Universal City Studios, Inc.*,
   618 F.2d 972 (2d Cir. 1980)...........................................................................................7, 20

iii

*Hosseinzadeh v. Klein*,
  276 F. Supp. 3d 34 (S.D.N.Y. 2017)..................................................5

*Jarvis v. A&M Records*,
  827 F. Supp. 282 (D.N.J. 1993) ...................................................13

*Kelly v. L.L. Cool J.*,
  145 F.R.D. 32 (S.D.N.Y. 1992), *aff'd*, 23 F.3d 398 (2d Cir. 1994)....................................7, 20

*Key Publ'ns Inc. v. Chinatown Today Publ'g Enters. Inc.*,
  945 F.2d 509 (2d Cir. 1991)........................................................12

*Kirtsaeng v. John Wiley & Sons, Inc.*,
  136 S. Ct. 1979 (2016)..............................................................14

*Knitwaves, Inc. v. Lollytogs Ltd.*,
  71 F. 3d 996 (2d Cir. 1995)........................................................21

*Kregos v. Associated Press*,
  3 F.3d 656 (2d Cir. 1993)..........................................................22

*L. Batlin & Son, Inc. v. Snyder*,
  536 F.2d 486 (2d Cir. 1976)......................................................11

*Lombardo v. Dr. Seuss Enters., L.P.*,
  279 F. Supp. 3d 497 (S.D.N.Y. 2017), *aff'd*, 729 F. App'x 131 (2d Cir. 2018)......................5

*McDonald v. West*,
  138 F. Supp. 3d 448 (S.D.N.Y. 2015)......................................4, 6, 7, 8

*Newton v. Diamond*,
  388 F.3d 1189 (9th Cir. 2004) ...................................................13

*Noval Williams Films LLC v. Branca*,
  No. 14 Civ. 4711(PAC), 2018 WL 389092 (S.D.N.Y. Jan. 11, 2018) ...................................21

*NXIVM Corp. v. Ross Inst.*,
  364 F.3d 471 (2d Cir. 2004)........................................................18

*On Davis v. Gap, Inc.*,
  246 F.3d 164 (2d Cir.2001)......................................................14, 15

*Oyewole v. Ora*,
  291 F. Supp. 3d 422 (S.D.N.Y. 2018), *appeal docketed*,
  No. 18-1311 (2d Cir. May 1, 2018) ..........................................5, 15

*Papazian v. Sony Music Entm't*,
  No. 16-cv-07911 (RJS), 2017 WL 4339662 (S.D.N.Y. Sept. 28, 2017) ....................20, 21, 22

iv

*Patsy's Italian Rest., Inc. v. Banas*,
  575 F. Supp. 2d 427 (E.D.N.Y. 2008), *aff'd*, 658 F.3d 254 (2d Cir. 2011)..............................5

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
  602 F.3d 57 (2d Cir. 2010)............................................................................................4, 8

*Peter Pan Fabrics, Inc. v. Rosstex Fabrics, Inc.*,
  733 F. Supp. 174 (S.D.N.Y. 1990) ..................................................................................10

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
  134 S. Ct. 1962 (2014)............................................................................................20, 22

*Prunty v. Vivendi*,
  130 F. Supp. 3d 385 (D.D.C. 2015) ..................................................................................9

*Psihoyos v. John Wiley & Sons, Inc.*,
  748 F.3d 120 (2d Cir. 2014)..............................................................................................21

*Ringgold v. Black Entm't Television, Inc.*,
  126 F.3d 70 (2d Cir. 1997)................................................................................................13

*Sandoval v. New Line Cinema Corp.*,
  147 F.3d 215 (2d Cir. 1998)..............................................................................................13

*Sekisui Am. Corp. v. Hart*,
  15 F. Supp. 3d 359 (S.D.N.Y. 2014)..................................................................................5

*Shaheed-Edwards v. Syco Entm't, Inc.*,
  No. CV 17-06579 SJO (SS), 2017 WL 6403091 (C.D. Cal. Dec. 14, 2017)...........................7

*Signo Trading Int'l Ltd. v. Gordon*,
  535 F. Supp. 362 (N.D. Cal. 1981) ..................................................................................11

*Stone v. Williams*,
  970 F.2d 1043 (2d Cir. 1992)............................................................................................22

*TufAmerica, Inc. v. Diamond*,
  968 F. Supp. 2d 588 (S.D.N.Y. 2013)..........................................................................4, 13

*Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*,
  338 F.3d 127 (2d Cir. 2003)..............................................................................................12

*Vil v. Poteau*,
  No. 11-11622, 2015 WL 897965 (D. Mass. Mar. 3, 2015) ..................................................9

*VMG Salsoul, LLC v. Ciccone*,
  824 F.3d 871 (9th Cir. 2016) ............................................................................................13

*Waldman Publ'g Corp. v. Landoll, Inc.*,
   43 F.3d 775 (2d Cir. 1994)................................................................................11

*Walker v. Time Life Films, Inc.*,
   784 F.2d 44 (2d Cir. 1986)..................................................................................7

*We Shall Overcome Foundation v. Richmond Organization, Inc.*,
   No. 16cv2725(DLC), 2017 WL 3981311 (S.D.N.Y. Sept. 8, 2017) ................11, 12

*Weissmann v. Freeman*,
   868 F.2d 1313 (2d Cir. 1989)............................................................................11

*Woods v. Bourne Co.*,
   60 F.3d 978 (2d Cir. 1995)......................................................................11, 12, 16

*Wright v. Warner Books, Inc.*,
   953 F.2d 731 (2d Cir. 1991)..........................................................................13, 14

*Wu v. John Wiley & Sons, In*c.,
   No. 14 Civ. 6746(AKH)(AJP), 2015 WL 5254885 (S.D.N.Y. Sept. 10, 2015) ...............21, 22

**Federal Statutes**

17 U.S.C. § 101 ...............................................................................................10

17 U.S.C. § 107(1)-(4) .....................................................................................14

17 U.S.C. § 412 ..........................................................................................20, 21

17 U.S.C. § 504 ...............................................................................................20

17 U.S.C. § 507 ...............................................................................................20

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ...................................................1, 4, 5, 22

**Regulations**

37 C.F.R. § 202.1 ..............................................................................................9

**Other Authorities**

2 Howard B. Abrams, *The Law of Copyright*, § 15:52 (2006) ......................................17

Defendants Sony Music Entertainment ("SME"), Destiny Hope Cyrus, Smiley Miley, Inc. ("SMI"), Theron Thomas, Timothy Thomas, Michael Williams II, and Larry Rudolph, respectfully submit this memorandum of law in support of their motion to dismiss the Second Amended Complaint ("SAC") of plaintiff Michael May with prejudice.

In this music copyright infringement case, plaintiff's entire claim rests upon a single, narrow, and specific allegation of copying and substantial similarity.  Plaintiff alleges that defendants infringed his copyright in a song entitled "*We Run Things*" ("*Run*") by using, in a song entitled "*We Can't Stop*" ("*Stop*"), a variation of a short phrase that plaintiff admits he adapted from Jamaican Patois for use in *Run.*  Because that is far too slender a reed to be the predicate for this action, defendants make the instant motion to dismiss pursuant to F.R.C.P. 12(b)(6).

Plaintiff alleges that he created the phrase "We run things.  Things no run we."  SAC ¶ 66.  He admits that he created this phrase based on a phrase from the "Jamaican Patois dialect," which he claims to have "uniquely and creatively mix[ed] . . . with the English language."  *Id.* ¶ 69.  He further alleges that, in strict Jamaican Patois, the phrase is spelled "Wi Run Tings. Tings nuh run wi." and that the literal English translation of that phrase is "We Run Things. Things Don't Run We."  *Id.*

In the first instance, a short phrase like this is not protectable as a matter of copyright law.  Second, even assuming plaintiff had created something protectable, he admits that it is a translation and/or an adaptation of the Jamaican Patois and therefore it is, at best, a derivative work.  However, to qualify as a copyrightable derivative, his new material must be independently protectable; here, it is most certainly not:  his change from "Wi run tings.  Tings nuh run wi." to "We Run Things.  Things No Run We." is not, as he claims, a "unique" and

"creative" "mix" (SAC ¶ 69), but is rather a mere transliteration that cannot satisfy that minimum threshold. Even if it did, copyright protection for a derivative extends only to the new elements plaintiff added. Plaintiff also admits that defendants *altered* his "new" elements, as *"Stop"* uses the phrase "We Run Things, Things Don't Run We." *Id.* ¶ 69. In essence, plaintiff's entire claim rests on the far-fetched notion that defendants' use of a variation of a short phrase originating from the Jamaican Patois, infringes his copyright in a different and negligible variation of that same phrase. That is not the law.

Even assuming that plaintiff could maintain a claim for copyright infringement based on this theory, the use would be a fair use and should be dismissed on that alternative basis. Finally, assuming *arguendo* this complaint survives this motion, plaintiff is not entitled to certain relief he seeks.

We expand upon these various arguments below.

## FACTUAL BACKGROUND

### A. Plaintiff's Alleged Copyright Interest[1]

The SAC alleges that May, a songwriter and recording artist residing in Jamaica, West Indies (SAC ¶¶ 1, 64), was a disc jockey performing throughout Jamaica from 1981 through to 1988 (*id.* ¶ 65). In or about 1981, he claims to have begun singing the phrase "We run things, things no run we" (the "Phrase") as a "hook" or "punch line" for his performances.[2] *Id.* ¶ 66. According to the SAC, this Phrase belongs exclusively to May because he "us[ed] part of the Jamaican Patois dialect and uniquely and creatively mix[ed] same with the English language." *Id.* ¶ 69. Around 1988, plaintiff authored and recorded *Run* using the Phrase in its chorus. *Id.* ¶¶

---

[1] For purposes of this motion only, defendants accept the factual allegations of the SAC as true including but not limited to plaintiff's allegation of ownership of a valid copyright—an issue that will raise substantial factual and Jamaican law issues which will need to be explored if this action is not dismissed.

[2] Though the SAC does not include plaintiff's date of birth, based on public information, in 1981, plaintiff would have been somewhere between 11-16 years old. *See* Koonce Decl. Ex. D (indicating he was born circa 1970) and Ex. E (describing him as approximately sixteen in 1981).

66, 68; Koonce Decl. Ex. A (audio recording of *Run*); Ex. B (transcribed lyrics).  Plaintiff claims that *Run* is an anthem for "personal freedom" and his "situational control" (*Id.* ¶¶ 70, 95), but it clearly has several additional themes, primarily plaintiff's material success, his triumph over other men, and most prominently, his domination of women.  This last theme is a central feature in four of six verses and the majority of the choruses.  Koonce Decl. Exs. A, B.

In 2017, almost 30 years after the release of his song, plaintiff registered the composition of *Run* with the U.S. Copyright Office, listing himself as one of four co-authors and copyright owners of the music and lyrics.  *Id.* ¶ 74; Ex. C.

### B.   Defendants' Song

In June 2013, defendants' song *Stop* was released by SME (SAC ¶ 90; Ex. D (sheet music for *Stop*), Koonce Decl. Ex. C (audio recording of *Stop*)), and plaintiff alleges that defendants Theron and Timothy Thomas (two of the songwriters) were born in the U.S. Virgin Islands, are inspired by Caribbean musical influences, and would have known of plaintiff's song *Run*.  *Id.* ¶¶ 29-42.  As performed by Ms. Cyrus, *Stop* uses recognizable elements from other party songs and combines them to create a call for female liberation and defiant empowerment: "This is our house / This is our rules" and "[W]e can do what we want . . . we can say what we want . . . we can love who we want."  Koonce Decl. Ex. C; SAC Ex. D.

### C.   Plaintiff's Second Amended Complaint

On March 13, 2018, plaintiff filed his original complaint in this action.  [Doc. No. 1.]  On March 30, 2018, plaintiff filed his Amended Complaint ([Doc. No. 17]), followed on June 5, 2018 by the SAC ([Doc. No. 32]).  In the SAC, the sole specific allegation of infringement against defendants is that *Stop* "copies, misappropriates, takes, includes in its entirety, and/or is substantially similar to" May's purportedly original phrase "*We run things.  Things no run we.*" SAC ¶ 91 (emphasis in original); *see also id.* ¶¶ 69, 78-79, 93, 97, 107, 118.

# I.

## THE STANDARD ON THIS MOTION

Although for the purposes of a Rule 12(b)(6) motion a court must accept well-pled *factual* allegations as true, mere legal conclusions "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and alterations omitted). Under this governing standard, a plaintiff must affirmatively provide "enough facts to state a claim to relief that is *plausible* on its face," rather than merely possible. *Id.* (emphasis added); *Iqbal*, 556 U.S. at 678-79. Where plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

Courts routinely dismiss non-actionable copyright infringement claims like this one at the pleading stage. *See, e.g.*, *Effie Film, LLC v. Murphy*, 932 F. Supp. 2d 538, 560 (S.D.N.Y. 2013), *aff'd*, 564 F. App'x 631 (2d Cir. 2014); *Fulks v. Knowles-Carter*, 207 F. Supp. 3d 274, 293 (S.D.N.Y. 2016); *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 604-05 (S.D.N.Y. 2013). In doing so, the Court may consider "documents attached as exhibits, incorporated by reference, or that are 'integral' to the complaint"—including, in copyright infringement cases, the works at issue. *McDonald v. West*, 138 F. Supp. 3d 448, 453 (S.D.N.Y. 2015) ("Courts in this district regularly apply this rule in music copyright cases to listen to the songs at issue when evaluating a motion to dismiss.") (citations omitted); *see also Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) ("In copyright infringement actions, 'the works themselves supersede and control contrary descriptions of them,' including 'any contrary

allegations, conclusions or descriptions of the works contained in the pleadings.") (internal citation omitted). Thus, this court can consider the recordings and lyrics annexed to the accompanying declarations in deciding this motion. The court can also take judicial notice of publicly available information on the Internet. *See Boarding Sch. Review, LLC v. Delta Career Educ. Corp.*, No. 11 Civ. 8921(DAB), 2013 WL 6670584, at *1 n.1 (S.D.N.Y. Mar. 29, 2013) (courts in this Circuit have repeatedly held that they "generally ha[ve] the discretion to take judicial notice of internet material"); *Sekisui Am. Corp. v. Hart*, 15 F. Supp. 3d 359, 365 n.59 (S.D.N.Y. 2014) ("tak[ing] judicial notice of the public information on [a third party's] website . . ."); *Patsy's Italian Rest., Inc. v. Banas,* 575 F. Supp. 2d 427, 443 n.18 (E.D.N.Y. 2008) ("It is generally proper to take judicial notice of articles and Web sites published on the Internet."), *aff'd*, 658 F.3d 254 (2d Cir. 2011).

Courts in this Circuit also regularly dismiss cases at the pleading stage based on the fair use defense. *See, e.g.*, *Oyewole v. Ora*, 291 F. Supp. 3d 422 (S.D.N.Y. 2018), *appeal docketed*, No. 18-1311 (2d Cir. May 1, 2018); *Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 45-47 (S.D.N.Y. 2017). Although this defense is a mixed question of law and fact, courts may grant a motion to dismiss under Rule 12(b)(6) when, as here, "discovery would not provide any additional relevant information in this inquiry" because "[a]ll that is necessary for the court to make a determination as to fair use are the two [works] at issue." *Lombardo v. Dr. Seuss Enters., L.P.*, 279 F. Supp. 3d 497, 504 (S.D.N.Y. 2017) (citation omitted), *aff'd*, 729 F. App'x 131 (2d Cir. 2018); *see also Arrow Prods., LTD. v. Weinstein Co.*, 44 F. Supp. 3d 359 (S.D.N.Y. 2014) (holding that "discovery would not provide any additional relevant information in this inquiry" because "[a]ll that is necessary for the court to make a determination as to fair use are the two films at issue").

5

## II.

## ARGUMENT

"To state a claim for copyright infringement, a plaintiff must plausibly allege facts that demonstrate (1) ownership of a valid copyright, and (2) the defendants' copying of constituent, original elements of plaintiff's copyrighted work."  *McDonald*, 138 F. Supp. 3d at 453 (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).  Here, May claims copyright ownership of his song *Run*, and that defendants' song *Stop* infringes that work.  SAC ¶¶ 1, 69, 74, 91, 93, 94, 97, 107, 110, 118, 119, 138, 141, 142, 146, 147, 152, 155, 156.  However, "[s]imply because a work is copyrighted does not mean every element of that work is protected."  *Boisson v. Banian, Ltd.*, 273 F.3d 262, 268 (2d Cir. 2001).  Copyright protection only extends to elements of a work that are original.  *Id.* at 268-69 ("If a work is not original, then it is unprotectible.  Likewise an element within a work may be unprotectible even if other elements, or the work as a whole, warrant protection.").

Thus, a threshold question for this Court is whether plaintiff has plausibly pleaded that defendants have copied original, *protectable* elements of May's work.  As explained below, he has not, and even assuming he could somehow make that showing, any use of the Phrase by defendants constitutes a fair use.

### A. Short Phrases Such as the One Plaintiff Claims to Have Adapted Are Not Protectable as a Matter of Copyright Law

It is crystal clear that the *only* basis for plaintiff's claim that the song *Stop* infringes the song *Run* is the Phrase.  *See, e.g.*, SAC ¶¶ 66-67, 76 (Defendants have infringed by "by using, misappropriating and infringing on Plaintiff May's unique, creative and original lyrical phrase."); 77-79 ("Defendants intentionally and unlawfully used Plaintiff May's original, creative and unique lyrical phraseology as the repeated chorus and hook in '*We Can't Stop*.'");

6

91 ("Defendants' '*We Can't Stop*' copies, misappropriates, takes, includes in its entirety, and/or is substantially similar to, Plaintiff May's unique, creative and original lyrical phrase"); 92 ("the overarching theme of defiance seen in Defendants' "*We Can't Stop*" is nearly exclusively based upon and authenticated by the brash and defiant nature/self rule/self-control embodied by Plaintiff May's original, creative and unique lyrical phrase"); 93 ("Defendants' . . . use/taking/copying/misappropriating of Plaintiff May's original, unique and creative lyrical phrase within Defendants' "*We Can't Stop*" fully establishes the memorable context for which Defendants' song is popularly known.").

Plaintiff also makes exceedingly generalized allegations about appropriation of other elements, such as the "theme" of his 1988 song. *See* SAC ¶¶ 57, 66, 70, 83, 92. However, "[t]hemes fall into the category of uncopyrightable ideas," *McDonald*, 138 F. Supp. 3d at 455 (citing *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 48-49 (2d Cir. 1986), and *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 979 (2d Cir. 1980)). Similarly, plaintiff vaguely claims that defendants' song infringed his "vocal melody/rhythm/cadence/inflection/vocal rhythm," *see* SAC ¶¶ 97, 110-111, 119, but fails to plausibly identify any such similarities. A plaintiff must specifically identify the alleged instances of infringement; generalized allegations such as pleaded here are insufficient to withstand a motion to dismiss. *See, e.g.*, *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992), *aff'd*, 23 F.3d 398 (2d Cir. 1994); *see also Shaheed-Edwards v. Syco Entm't, Inc.*, No. CV 17-06579 SJO (SS), 2017 WL 6403091, at *3 (C.D. Cal. Dec. 14, 2017) (allegations that defendant's song used "two short lyrics" the same "chorus, concept, and cadence'" as plaintiff's work are "merely conclusory and cannot be sustained without more specificity").

Under established Second Circuit precedent, "two works are not substantially similar as a matter of law if 'the similarity between two works concerns only non-copyrightable elements of the plaintiff's work.'" *McDonald*, 138 F. Supp. 3d at 454 (citing *Peter F. Gaito*, 602 F.3d at 64). It is therefore plaintiff's burden to plausibly plead and ultimately prove that, with respect to the purportedly infringing work, any alleged "substantial similarities relate to protectable material" in the purportedly infringed work. *Edwards v. Raymond*, 22 F. Supp. 3d 293, 297 (S.D.N.Y. 2014) (citation omitted). May cannot do so here because a short phrase is unprotectable, and even if there was some protectable aspect of the Phrase, defendants have not taken any protected expression.

The Phrase is a simple one, consisting of two short clauses comprising, in total, seven words: "We run things.  Things no run we."  The first clause is three words, the second repeats those same words in reverse order adding the word "no."

It is an axiom of copyright law that "[w]ords and short phrases, such as titles or slogans, are insufficient to warrant copyright protection, as they do not exhibit the minimal creativity required for such protection." *Bell v. Blaze Magazine*, No. 99 CIV. 12342(RCC), 2001 WL 262718, at *2 (S.D.N.Y. Mar. 16, 2001) (citation omitted); *see also Boone v. Jackson*, 206 F. App'x, 30, 33 (2d Cir. 2006); *Boyle v. Stephens, Inc.*, No. 97 CIV. 1351(SAS), 1998 WL 80175, at *5 (S.D.N.Y. Feb. 25, 1998), *aff'd*, 1998 WL 690816 (S.D.N.Y. Sept. 29, 1998) and 21 F. App'x 76 (2d Cir. 2001); *McDonald*, 138 F. Supp. 3d at 456 (The phrase "Made In America" in song lyrics not copyrightable:  "[i]t is far too brief, common, and unoriginal to create any exclusive right . . .").  This prohibition on protection for short phrases has been codified in the Code of Federal Regulations, which mandates that "[w]ords and short phrases such as names,

titles, and slogans" are "not subject to copyright and applications for registration of such works cannot be entertained."  37 C.F.R. § 202.1.

In *Bell v. Blaze*, this Court addressed a claim that the five-word phrase "Hip Hop Behind the Walls" had been infringed, finding that it was not subject to protection in the first instance because it was merely a short phrase.  2001 WL 262718, at *4.  *See also Boone*, 206 F. App'x at 33 (no infringement of phrase "holla back" because "common phrases are not protectable under copyright"); *Prunty v. Vivendi*, 130 F. Supp. 3d 385, 390 (D.D.C. 2015) ("[N]either the song title 'The Keys to the Kingdom' nor the phrase 'keys to the kingdom' is copyrightable material."); *Vil v. Poteau*, No. 11-11622, 2015 WL 897965, at *5 n.4 (D. Mass. Mar. 3, 2015) (phrase "Learn to Read and Write is a Right" unprotectable).

Because the short Phrase is the only portion of his song *Run* that May has identified as infringing, and because that Phrase is unprotectable as a matter of law, he cannot sustain his copyright infringement claim.

### B.   Assuming Plaintiff Has Any Protection for the Phrase, It Extends Only to His Exceedingly Limited Original Contribution to It

Plaintiff also cannot demonstrate a protectable interest in the Phrase because he did not originate it.  *Boisson*, 273 F.3d at 268-69 (noting that requirement of "originality is 'the *sine qua non* of copyright,'" and that "[s]ome material is unprotectible because it is in the public domain, which means that it 'is free for the taking and cannot be appropriated by a single author even though it is included in a copyrighted work.'" (citing *Feist Publ'ns*, 499 U.S. at 348, and *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 710 (2d Cir. 1992)).  While the court can take judicial notice of the public evidence showing that the Phrase was in common usage in

Jamaica prior to its appearance in *Run* in 1988,[3] for purposes of this motion, it must accept plaintiff's *factual* description of the origin of the Phrase (although not his conclusory and/or legal allegations):

> This lyrical phrase is distinctly Plaintiff May's with its own unique phraseology, meaning and linguistic combinations using part of the Jamaican Patois dialect and uniquely and creatively mixing same with the English language. Phonetically, in strict Jamaican Patois, Mr. May's lyrical phrase would be spelled "Wi run tings. Tings nuh run wi." Though grammatically incorrect, the literal English translation is "We run things. Things don't run we."

SAC ¶ 69. Based on this description, even assuming May could protect this seven-word Phrase, what he claims to have created is, at best, a translation or adaptation of pre-existing material from the Jamaican Patois. In short, he claims to have created a derivative work.

Under the Copyright Act, a derivative work is "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a 'derivative work.'" 17 U.S.C. § 101. As such, a derivative work can be based on a preexisting copyrighted work, or a work that is in the public domain. *Peter Pan Fabrics, Inc. v. Rosstex Fabrics, Inc.*, 733 F. Supp. 174, 177 (S.D.N.Y. 1990). To qualify as a protectable derivative work, the new material must be sufficiently original to be

---

[3] *See, e.g.*, Koonce Decl. Ex. F (online Jamaican Patois dictionary defining "Wi run tings, tings nuh run wi") and Koonce Decl. Ex. G (website of "Wise Jamaican Proverbs" defining "Wi run tings, tings nuh run wi"); *see also* two popular Jamaican songs—Johnny Osbourne's "A We Run Things" and Nitty Gritty's "We Run Things"—that each appear to predate plaintiff's 1988 release and use the Phrase prominently as part of their chorus. *Id.* Exs. H-K. *See also* November/December 2003 article entitled "We run tings—tings nuh run we!" in *Everybody's Magazine* by Barnes ("A very bold saying laced with temerity amongst many Jamaicans is 'We run tings, tings nuh run we!'"); August 2009 *Los Angeles Sentinel* article entitled "SCLC Fight Against Gay Marriage A No Win Situation" by Cannick ("There's an old Jamaican proverb that goes something like, 'we run tings, tings nuh run we.'"); 1989 issue of *Money Index* (describing the Phrase as a "famous [Jamaican] saying"). *Id.* Exs. L-N.

independently protectable.  *Woods v. Bourne Co.*, 60 F.3d 978 (2d Cir. 1995); *Weissmann v. Freeman*, 868 F.2d 1313, 1320-21 (2d Cir. 1989); *see also L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486, 490 (2d Cir. 1976) (author must contribute more than a "trivial variation") (citing *Alfred Bell & Co. v. Catalda Fine Arts, Inc.*, 191 F.2d 99, 103 (2d Cir. 1951)).  Most importantly, "[i]n the case of a derivative work based on an underlying work that is in the public domain, only the material added to the underlying work is protected by copyright."  *Waldman Publ'g Corp. v. Landoll, Inc.*, 43 F.3d 775, 782 (2d Cir. 1994)).

Because plaintiff claims to own the copyright in an adaptation from the Jamaican Patois (that is, from the public domain), he can only hold a copyright interest in the Phrase to the extent he has contributed sufficient, non-trivial, original authorship to render the new work independently copyrightable as a derivative.  Even if so, his copyright interest extends only to his original contribution.  The only differences between plaintiff's version—"We run things.  Things no run we."—and the Patois version—"Wi run tings.  Tings nuh run wi."—are trivial.  Essentially, May has not even "translated" the Jamaican Patois; he merely penned a rote transliteration:  the substitution of "e" for "i", of "th" for "t", and of "o" for "uh".  In the lone copyright case defendants have been able to identify addressing this type of rote transliteration, the court held that the result was not of sufficient originality to constitute a protectable derivative work.  *See Signo Trading Int'l Ltd. v. Gordon*, 535 F. Supp. 362, 364-65 (N.D. Cal. 1981).  Likewise here, May's (minor) transliteration does not display the requisite originality for protection even as a derivative work.

*We Shall Overcome Foundation v. Richmond Organization, Inc.*, No. 16cv2725(DLC), 2017 WL 3981311 (S.D.N.Y. Sept. 8, 2017) amply illustrates the proper analysis.  At least one version of the song at issue there, "*We Shall Overcome*," was in the public domain.  Defendants,

the putative copyright owners, contended the changes they made to it were sufficiently transformative and original to qualify as a protectable derivative work.  The Court concluded those changes were not sufficiently original and, even if defendants' work qualified under this standard, protection extends only to the new material contributed.  Courts must exercise "special caution in analyzing originality in derivative works, since too low a threshold will 'give the first derivative work creator a considerable power to interfere with the creation of subsequent derivative works from the same underlying work.'"  *Woods*, 60 F.3d at 990 (quoting *Gracen v. Bradford Exchange*, 698 F.2d 300, 305 (7th Cir. 1983) (alterations omitted).  Applying these principles, the *We Shall Overcome* court held that defendants' changes—"will" to "shall" and "down" to "deep"—did not constitute a "distinguishable" (and therefore protectable) variation.  Both that Court's analysis, and its conclusion, applies perforce in the instant case.

Even if May's contribution was sufficiently original to qualify as a derivative, he concedes that the lyric used in *Stop* differs from the Phrase, as it substitutes the word "don't" for "no" (or "nuh" in the Jamaican Patois).  Because any protection plaintiff has in his derivative is limited to his original contribution and must exclude public domain elements, courts apply a "more discerning ordinary observer" test to determine whether there is substantial similarity. *Folio Impressions, Inc. v. Byer Cal.*, 937 F.3d 759, 764 (2d Cir. 1991) (a more refined analysis is required where plaintiff's work is not wholly original but rather incorporates public domain elements); *see also Key Publ'ns Inc. v. Chinatown Today Publ'g Enters. Inc.*, 945 F.2d 509, 514 (2d Cir. 1991) (same); *Boisson*, 273 F.3d at 272-73 (same).  In these circumstances, the copying must be exact or near-exact copying to be actionable.  *Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 136-37 (2d Cir. 2003).  By plaintiff's own admission (SAC ¶ 69), that is not the case here.  The lack of near exact copying—and the fact that defendants

12

have not used one of his transliterations ("o" for "uh")—contributes all the more to the conclusion that plaintiff has not and cannot prove that a more discerning ordinary observer could find substantial similarity of protectable material.

Indeed, the "taking" alleged here is at best *de minimis* and non-actionable for that reason as well. *See TufAmerica*, 968 F. Supp. 2d at 598 (determining in part that samples taken from other songs were "so trivial 'as to fall below the quantitative threshold of substantial similarity, which is always a required element of actionable copying'") (quoting *Sandoval v. New Line Cinema Corp.*, 147 F.3d 215, 217 (2d Cir. 1998), and *Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70, 74 (2d Cir. 1997) (distinguishing *de minimis* use from fair use)); *Wright v. Warner Books, Inc.*, 953 F.2d 731, 740 (2d Cir. 1991) (deciding that the use of seven segments from unpublished letters and journals, including one fifty-five word passage, is "*de minimis* and beyond the protection of the Copyright Act"); *see also Newton v. Diamond*, 388 F.3d 1189, 1197 (9th Cir. 2004) (determining that short segment copied from one song to another was *de minimis* use).

In sum, there is no substantial similarity between the two songs at issue here "in light of the written lyric's status as an unprotected [expression] and the fundamental differences in the parties' usage of the phrase." *Acuff-Rose Music, Inc. v. Jostens, Inc.*, 988 F. Supp. 289, 294 (S.D.N.Y. 1997). As a result, plaintiff's claims must be dismissed.[4]

---

[4] This case must be distinguished from the line of cases about "sampling." "Sampling" is the "technique of digitally encoding music or sound and reusing it as part of a composition or recording." *TufAmerica*, 968 F. Supp. 2d at 593. In other words, sampling is lifting the actual sounds from the original *recording* itself, not taking an element of the lyrics and composition and incorporating it, which is what is alleged here. Because this is not a case in which "the *precise* relationship of the [musical] phrases vis a vis each other was copied" (*Jarvis v. A&M Records*, 827 F. Supp. 282, 292 (D.N.J. 1993), and because *Stop* does not involve "the use of an exact (or presumably exact) sample" of *Run* (*TufAmerica*, 968 F. Supp. 2d at 597), the "fragmented literal similarity test" that many courts apply to sampling cases is not appropriate here. And even if applicable, the "sampling" here is so *de minimis* as to be non-actionable. *See VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 887 (9th Cir. 2016); *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 796-97 (6th Cir. 2005).

13

### C.    Assuming *Arguendo* Substantial Similarity of Protectable Expression, Defendants' Use is a Fair Use

Even if plaintiff could successfully plead substantial similarity on the undisputed facts here, the fair use doctrine would require dismissal.  Fair use serves the Copyright Act's goal of "stimulat[ing] activity and progress in the arts for the intellectual enrichment of the public" (*Cariou v. Prince*, 714 F.3d 694, 705 (2d Cir. 2013)) and helps strike the balance between the Act's aims of "encouraging and rewarding authors' creations while also enabling others to build on that work" (*Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1986 (2016)).  The Copyright Act sets forth four, non-exclusive factors to be considered when analyzing fair use:

> (1)    the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2)    the nature of the copyrighted work;
>
> (3)    the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4)    the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107(1)-(4).  No single factor is dispositive, *Wright v. Warner Books, Inc.*, 953 F.2d 731, 740 (2d Cir. 1991), and the four factors are considered together rather than "treated in isolation," *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994).  Under these four factors, this Court should easily find fair use here as a matter of law.

### 1.    The Purpose and Character of Defendants' Use

The "heart of the fair use inquiry" is the first factor—in particular, whether the use is "transformative" by "add[ing] something new, with a further purpose or different character," *On*

*Davis v. Gap, Inc*., 246 F.3d 164, 174 (2d Cir.2001) (quoting *Campbell*, 510 U.S. at 579).[5]  The operative question is "whether the new work merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message."  *Id.* (internal quotation marks omitted) (citing *Campbell*, 510 U.S. at 579); *see also Oyewole*, 291 F. Supp. 3d 422 ("In analyzing the transformative nature of the works at issue, courts 'examine how the [] works may 'reasonably be perceived.'") (citation omitted).  "[T]ransformative works . . . lie at the heart of the fair use doctrine's guarantee of breathing space" for creativity and can be deemed non-infringing as a matter of law.  *Cariou*, 714 F.3d at 705-06.

The first factor weighs heavily in favor of a finding of fair use because defendants' use of the Phrase in *Stop* is clearly transformative, whether considered by comparing the Songs as a whole or comparing the lyrics.  *Stop* has a completely "different character" than *Run* and "employ[s] new aesthetics with creative and communicative results distinct from" plaintiff's song.  *Id.* at 708.

Critically, since the sole specific allegation of similarity is in the lyrics, the messages in the respective lyrics are starkly different:  one is a 1980s anthem celebrating male authority, and the other a song for a new millennium asserting rebellion against just such authority.  In *Run*, the Phrase is used to express plaintiff's power and authority, and is offered in different iterations including "We rule girl, girls no rule we."  It also describes different conquests, including victories over money, men and most of all, over women.  Koonce Decl. Exs. A, B.  *Stop* is sung by a *woman* to her *peers*, reclaiming her independence and free expression, and the Phrase is

---

[5] Although the first fair use factor also requires the court to consider whether the allegedly infringing work has a commercial purpose, courts "do not place much significance on that fact" when the allegedly infringing work is transformative.  *Cariou*, 714 F.3d at 708.  In explaining the diminished significance of the commercial purpose factor, the Supreme Court has noted that "the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use."  *Campbell*, 510 U.S. at 579.

used alongside other lyrics that reinforce the theme of female empowerment.  Koonce Decl. Exs. C, D. (*e.g.*, "This is our house /This is our rules"; "Can't you see it's we who own the night"; "It's our party we can do what we want/ It's our party we can say what we want/ It's our party we can love who we want").  This is precisely the type of transformation that provides a "further purpose or different character, altering the first with new expression, meaning, or message."  *See Bourne*, 602 F. Supp. 2d at 509 (recognizing a new work as transformative where the two songs at issue were "strikingly different in tone and message" and the melodies were different).

As is also apparent by simply listening to the songs (*compare* Koonce Decl. Ex. A *with* Ex. C), the musical compositions differ entirely.  Plaintiff's work is a fast-paced, upbeat chat featuring classic instrumentation of the Jamaican dancehall genre, including relatively simple orchestration with an electronic drum set and keyboard looping in the background.  Defendants' work is slower in tempo, more serious in tone, and lacks any of the stylings of Caribbean and Jamaican music generally or dancehall music specifically; it is also a highly produced song, with layers of instruments that build to fill in the arrangement.  Unlike May's voice in *Run*, Cyrus' voice is filtered and layered several times on top of itself to magnify her vocal effect.  Any listener (not to speak of the "more discerning" listener) can readily conclude—without the need for expert analysis—that the works simply do not share the same melody, rhythm, cadence or inflection.

In *Estate of Smith v. Cash Money Records, Inc.*, 253 F. Supp. 3d 737, 752 (S.D.N.Y. 2017), the Court dismissed because a 13-second sample was a fair use where defendant changed a few words in the song sampled and used it for a transformative purpose, finding that "Defendants' 'purposes in using [the original work] are sharply different from [the original artist's] goals in creating it.'"  *Id.* at 750 (quoting *Blanch v. Koons*, 467 F.3d 244, 252 (2d Cir.

16

2006)).  And in *Cariou*, plaintiff had published a book of classical portraits and landscape photographs; defendant then "altered and incorporated several of [those] photographs into a series of paintings and collages."  714 F.3d at 698.  The Court found that 25 of defendant's artworks were transformative because they "manifest an entirely different aesthetic from Cariou's photographs," contrasting Cariou's "serene and deliberately composed portraits" with Prince's "crude and jarring works."  *Id.* at 706.  Examining how the respective artworks would "reasonably be perceived," the Court held that "[h]ere, looking at the artworks and the photographs side-by-side, we conclude that Prince's images . . . have a different character, give Cariou's photographs a new expression, and employ new aesthetics with creative and communicative results distinct from Cariou's."  *Id.* at 707-08.  No less than in *Cariou* and *Estate of Smith*, defendants' song *Stop* transforms the Phrase into a new expression with a different purpose than plaintiff's song, and is therefore clearly transformative.

### 2.    The Nature of Plaintiff's Original Work

The second fair use factor, the nature of the copyrighted work, asks "whether the work is expressive or creative, . . . with a greater leeway being allowed to a claim of fair use where the work is factual or informational, and (2) whether the work is published or unpublished, with the scope for fair use involving unpublished works being considerably narrower."  *Blanch*, 467 F.3d at 256 (quoting 2 Howard B. Abrams, *The Law of Copyright*, § 15:52 (2006)).  However, "[b]ecause both creative and factual original works are entitled to some level of copyright protection, the second fair use factor is frequently not much help in a fair use analysis."  *Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339, 354 (S.D.N.Y. 2017) (citing *Campbell*, 510 U.S. at 586; *Blanch*, 467 F.3d at 257; *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 612 (2d Cir. 2006)).  While plaintiff's registered and published song is creative as a whole, the Phrase—the only portion on which plaintiff bases his entire

claim—is most certainly not, as discussed above.  Therefore, the second factor either slightly favors defendants or is neutral.

### 3.    The Amount and Substantiality of Defendants' Use

The third fair use factor asks "whether the quantity and value of the materials used are reasonable in relation to the purposes of the copying.  In other words, [the Court must] consider the proportion of the original work used, and not how much of the secondary work comprises the original."  *Cariou*, 714 F.3d at 710 (internal quotation marks, alteration, and citation omitted).  The factor "'has both a quantitative and a qualitative component' . . . [and] favors copyright holders where the portion used by the alleged infringer is a significant percentage of the copyrighted work, or where the portion used is 'essentially the heart of'" the copyrighted work.  *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 480 (2d Cir. 2004) (internal citations omitted).

For purposes of analysis of this factor, ***none*** of the musical arrangement of *Run* is even alleged to duplicate the musical arrangement in *Stop* and the ***only*** allegedly infringing similarity in the lyrics is the Phase.  Any arguable copyright protection May has in that Phrase is limited to his trivial contribution to it.  So even if the Phrase is qualitatively important to the Song because it is used as a "hook" or chorus as plaintiff pleads (SAC ¶¶ 66, 93), there has not been much (assuming any) taking of protectable expression.  Indeed, if this taking was enough to constitute infringement, anyone could take a public domain phrase such as, for instance, "To be or not to be," change one word, include it in a longer song, and then claim that anyone who used that or a similar phrase in a song with entirely different melody and accompaniment, was an infringer.

Consequently, the third factor strongly supports a finding of fair use.

### 4.    The Effect on the Market for Plaintiff's Song

The fourth and final factor also weighs in favor of fair use, as defendants' use of a variation of the Phrase in *Stop* can have no cognizable negative impact on the market for May's

song as a whole.  In applying the fourth factor, courts look to "whether the secondary use *usurps* the market of the original work."  *Cariou*, 714 F.3d at 710 (internal quotation marks and citation omitted).  In the Second Circuit, "an accused infringer has usurped the market for copyrighted works, including the derivative market, where the infringer's target audience and the nature of the infringing content is the same as the original." *Id*. at 709.  Of course, "the more transformative a new work is, the less likely it would be to substitute for the original in the marketplace."  *Abilene Music, Inc. v. Sony Music Entm't, Inc.*, 320 F. Supp. 2d 84, 93 (S.D.N.Y. 2003) (citing *Campbell*, 510 U.S. at 591).

In this case, it is simply not plausible to assume that there is any market for the Phrase standing alone (as opposed to plaintiff's song as a whole), much less that defendants somehow usurped that putative market, particularly because the saying admittedly preexisted plaintiff's use of it and because it, or variations of it, have been widely used subsequently.[6]  Comparing the respective markets for the two songs as a whole, it is totally implausible that any reasonable listener would find *Stop*—a song produced almost three decades later, in a different country and culture, in a different musical genre—to be a market substitute for *Run*.  *See Abilene*, 320 F. Supp. 2d at 93 ("Here, no reasonable jury could find that [the new work] would cause substantial harm to the market for [the original].").

Plaintiff also seems to suggest that his injury results, at least in part, from the fact that defendants copied the 'theme' of his song (SAC ¶¶ 57, 66, 70, 83), and that defendants are somehow trading in the "grittiness, aggression, and sultriness associated with U.S.-based hip

---

[6] Although plaintiff claims to have licensed this phrase once—twenty years ago—for a 1999 film (SAC ¶ 60), it has been used by many others.  *See supra* note 3.  It is also in common use across the internet: similar lyrics appear in hit songs from the 1990s and 2000s by well-known American artists such as Jay-Z, Mos Def, Lil Kim and Da Bush Babees (Koonce Decl. Exs. O-R); the phrase has appeared in in several works of literature, a popular American magazine, and multiple plays (Koonce Decl. Exs. S-CC); it even was the basis for a Nike ad campaign and has been trademarked by commercial entities in the U.S. and Europe (Koonce Decl. Exs. DD-FF).

hop, R&B, urban, and Caribbean music" (SAC ¶ 85). This argument fails for several reasons: as already established, themes are not "copyrightable expression" (*see Hoehling*, 618 F.2d at 979), and generalized allegations are insufficient to withstand a motion to dismiss (*see Kelly*, 145 F.R.D. at 36). Further, the attributes he claims are unique to "hip hop, R&B, urban, and Caribbean music" are by definition not unique to *him*, and in fact "grittiness, aggression, and sultriness" are attributes that could just as easily describe many types of music, including rock and roll, heavy metal, and jazz.

***

In sum, the weight of the fair use factors—particularly the most crucial first and fourth factors—firmly tips the balance of interests towards a finding of fair use.

### D. If This Action Survives, Plaintiff is not Entitled to Statutory Damages or Attorney's Fees, and Any Actual Damages Are Limited to the Three Year Statute of Limitations Period

A copyright plaintiff may elect to seek either actual damages (the amount lost by plaintiff, and any profits earned by defendant attributable to the infringement to the extent not duplicative), or statutory damages if plaintiff qualifies for the latter relief. 17 U.S.C. § 504. Even if this Court does not dismiss the SAC in its entirety, it should determine that plaintiff can only recover actual damages for the three years preceding filing of this action (*id.* § 507), and that he is not entitled to statutory damages or attorneys' fees (*id.* § 412).

With respect to actual damages, Supreme Court precedent as well as the law in this Circuit make clear that, in light of the statutory three-year limitations period (*id.* § 507), a plaintiff is only entitled to recover his or her purported losses or defendant's infringing profits for allegedly infringing acts within three years of the filing of the action. *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1972 (2014); *Goodman v. Universal Beauty Prods. Inc.*, No. 17-cv-1716(KBF), 2018 WL 1274855, at *4, *7 (S.D.N.Y. Mar. 9, 2018); *Papazian v. Sony*

20

*Music Entm't*, No. 16-cv-07911 (RJS), 2017 WL 4339662, at *6 (S.D.N.Y. Sept. 28, 2017); *Fischer v. Forrest*, No. 14 Civ. 1304(PAE)(AJP), 2017 WL 128705, at *7 (S.D.N.Y. Jan. 13, 2017), *report and recommendation adopted*, No. 14 Civ. 1304(PAE)(AJP), 2017 WL 1063464 (S.D.N.Y. Mar. 21, 2017).  This is true regardless of when the claim "accrued" for statute of limitations purposes.  While the Second Circuit follows the discovery rule (*Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120 (2d Cir. 2014)), that does nothing to change the three-year lookback for damages recovery.[7]  *See, e.g.*, *Goodman*, 2018 WL 1274855, at *7; *Papazian*, 2017 WL 4339662, at *6; *Fischer*, 2017 WL 128705, at *7; *Wu v. John Wiley & Sons, In*c., No. 14 Civ. 6746(AKH)(AJP), 2015 WL 5254885, at *7 (S.D.N.Y. Sept. 10, 2015); *Noval Williams Films LLC v. Branca*, No. 14 Civ. 4711(PAC), 2018 WL 389092, at *7 (S.D.N.Y. Jan. 11, 2018).

Here, May's original complaint was filed on March 13, 2018, meaning he cannot recover damages flowing from any alleged infringement occurring before March 13, 2015.  Because the vast majority of profits are earned within a year of a song's release and *Stop* was released on June 3, 2013, dismissal of May's claims for damages predating March 13, 2015 will substantially reduce any theoretical recovery in this case.

Section 412 of the Copyright Act mandates that a plaintiff cannot recover statutory damages or attorneys' fees if the work is not registered until after the alleged infringement already has "commenced."  17 U.S.C. § 412 ("no award of statutory damages or of attorney's fees . . . shall be made for . . . any infringement of copyright commenced after first publication of the work and before the effective date of its registration"); *see also Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F. 3d 996, 1012 (2d Cir. 1995).  Here, *Run* was released in 1988 but not registered for copyright in the United States until 2017, four years after *Stop* was released.  *Compare* SAC

---

[7] Plaintiff apparently concedes this point as his counsel acknowledged at the July 23, 2018 conference that May is not entitled to damages for any alleged infringements that occurred prior to March 13, 2015.

¶¶ 17, 21.  Thus, for statutory damages purposes, the purported infringement "commenced" after first publication of *Run* and before that song was registered, precluding both statutory damages and attorneys' fees.[8]  *See Papazian*, 2017 WL 4339662 at *6 (holding that, under *Petrella*, "no recovery of any kind, including statutory damages, is permitted for infringing acts occurring more than three years prior to suit," but that, in any event, "Plaintiff's claim for such damages here would still fail for the simple reason that Defendant's alleged infringement took place *before* Plaintiff registered his copyright").

## CONCLUSION

For the foregoing reasons, defendants respectfully requests that the Court grant its Rule 12(b)(6) motion to dismiss the SAC in its entirety with prejudice or, in the alternative, dismiss his claim for damages outside the limitations period and his claims for statutory damages and attorneys' fees.

---

[8] Plaintiff alleges that *Stop* was "re-released" in 2014, 2015, 2016, and 2017, and that it "continues to be release [sic] to present date to the public for sale." SAC ¶ 90.  (He is totally silent as to when he first learned of the alleged infringement).  To the extent this is an attempt to invoke the so-called "continuing infringement" theory of recovery, pursuant to which any ongoing infringing activity would toll the statute of limitations, the Second Circuit has repeatedly rejected application of the continuing infringement theory in this Circuit.  *See Kregos v. Associated Press*, 3 F.3d 656, 662 (2d Cir. 1993); *Stone v. Williams*, 970 F.2d 1043, 1049-50 (2d Cir. 1992).  To the extent plaintiff instead suggests that a "re-release" would constitute a separate, new act of infringement, the mere fact that a song remains continually available for purchase and download, over multiple years after its release, does not constitute a new act of infringement because it is not a "new wrong."  *See Petrella,* 134 S. Ct. at 1969 (infringement outside the limitations period only "starts a new limitations period" if it constitutes "a new wrong"); *see also Wu*, 2015 WL 5254885, at *4 (under "separate accrual rule," each new "wrong gives rise to a discrete claim that accrues at the time the wrong occurs") (citations and internal quotation marks omitted).  Under *Petrella*, a "new wrong" is defined as an act that "cause[s] 'harm [to the plaintiff] over and above the harm that the earlier acts caused." 134 S. Ct. at 1969 n.6 (citation omitted).

Dated: New York, New York           **DAVIS WRIGHT TREMAINE LLP**
        August 22, 2018

                                             By:    /s/ Marcia B. Paul
                                       _____

                                      Marcia B. Paul
                                      James Rosenfeld
                                      Lacy H. Koonce III
                                      1251 Avenue of the Americas, 21st Floor
                                      New York, NY 10020
                                      Tel: (212) 603-6427
                                      Fax: (212) 489-8340
                                      marciapaul@dwt.com
                                      jamesrosenfeld@dwt.com
                                      lancekoonce@dwt.com

                                      *Attorneys for Defendants*