```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF NEW YORK
 2

 3   ---------------------------------------X
                                          :
 4   MICHAEL MAY,                         : 18-CV-02238 (LAK)
                                          :
 5                    Plaintiff,          :
                 v.                       :
 6                                        : 500 Pearl Street
     DESTINY HOPE CYRUS, et al.,          : New York, New York
 7                                        :
                     Defendants.          : July 23, 2018
 8   ---------------------------------------X

 9
            TRANSCRIPT OF CIVIL CAUSE INITIAL CONFERENCE
10        BEFORE THE HONORABLE ROBERT W. LEHRBURGER
                 UNITED STATES MAGISTRATE JUDGE
11

12
     APPEARANCES:
13
     For the Plaintiff:      JOANN SQUILLACE, ESQ.
14                           STEPHEN DRUMMOND, ESQ.
                             Drummond & Squillace, PLLC
15                           175-61 Hillside Avenue, Suite 205
                             Jamaica, New York 11432
16
                             CAROL N. GREEN
17                           Carol Green Von Kaul, PA
                             150 NW 70th Avenue, Suite 4
18                           Plantation, Florida 33317

19
     For the Defendants:     JAMES E. ROSENFELD, ESQ.
20                           Davis Wright Tremaine LLP
                             1251 Avenue of the Americas
21                           New York, New York 10020

22

23   Court Transcriber:      MARY GRECO
                             TypeWrite Word Processing Service
24                           211 N. Milton Road
                             Saratoga Springs, New York 12866
25


     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service
```

2

1        THE CLERK:  We're in the matter of initial

2  conference, May v. Cyrus, et al, 18-CV-2238.  Attorneys,

3  please state your names for the record.

4        MS. SQUILLACE:  Good morning, Your Honor.  For

5  plaintiff Michael May, JoAnn Squillace from the Law Firm of

6  Drummond & Squillace.  Good morning again.

7        THE COURT:  Good morning.

8        MR. DRUMMOND:  Good morning, Your Honor.  For

9  plaintiff Michael May, Stephen Drummond from the Law Firm of

10  Drummond & Squillace.

11        MS. GREEN:  Good morning, Your Honor.  Carol Green

12  from Carol Green Von Kaul, law firm for plaintiff Michael May.

13        MR. ROSENFELD:  Good morning, Your Honor.  Jim

14  Rosenfeld; Davis Wright Tremaine for all of the defendants.

15        THE COURT:  All right.  Thank you.  I have to say I

16  took notice that there seem to be a lot of counsel for

17  plaintiff.  Any particular reason for that?

18        MR. DRUMMOND:  Judge, we actually thought they would

19  come armed and we didn't want to be outnumbered to be honest

20  with you.  Well, there's one more attorney here for their

21  behalf, Judge, so for some reason he's not seated at the

22  podium.  But we didn't want to be outnumbered in that effort.

23        THE COURT:  All right.  I didn't mean for today.  I

24  just meant in general on the list, on the signature page.

25        MR. DRUMMOND:  Judge, the firms have worked together

1   on a number of successful cases before and frankly it's a good

2   mix.

3            THE COURT:  Okay.  Nothing wrong with it.  I was

4   just curious given the number.  So the reason I wanted to meet

5   beyond just doing the schedule is to actually talk about the

6   motion to dismiss issue and determine whether it is such that

7   it might justify staying discovery until a motion is filed and

8   resolved.  Then I saw in the letter, I went through both of

9   them, that there are several issues that you seem to have on

10  the defense side and there were three generally substantive

11  ones that would get rid of the whole case, and then there were

12  a couple that were more to narrow it.  And I need just a

13  little guidance on a couple of aspects of it.

14           So the first contention is that it's not

15  protectedable.  And again, this is not an argument of an

16  entire motion, this is just a preview to determine what will

17  make sense.  So not protectable.  In my limited experience in

18  copyright in the music world, my understanding is that musical

19  phrasing in terms of notes and music is subject to sampling

20  and licensing for sampling.  Of course there are issues about

21  what qualifies and doesn't.  Why wouldn't this -- even though

22  these are just the words, is it subject to the same standards

23  or is there something that makes it non-protectable that's

24  different than your usual music sampling case?

25           MR. ROSENFELD:  Sure, Your Honor.  So you're asking

4

1  is there a difference between a song that allegedly copies

2  musical notes as opposed to just the words or phrases?

3          THE COURT:  Yes.

4          MR. ROSENFELD:  Yes, absolutely.  I mean musical

5  notes, the melody, the harmony, the rhythm is part of what's

6  copyrightable as a song.  The lyrics may be but it's well

7  established in case after case, and we've cited a bunch of

8  cases in the letter, we cite many more in the brief, that if

9  it's just a word or short phrase, it's not protectable.

10  There's a lot of authority to back that up.

11          THE COURT:  But specifically in music, and I'm more

12  curious about whether courts have compared it to music

13  sampling.  I mean it is a sampling in a sense.  It's a

14  sampling of the lyrics.  And there may well be a distinction,

15  but that's what I'm kind of curious about because I agree with

16  you that simple words and phrases are not copyrightable.  I

17  agree with that.  But this is part of a copyrighted work.  So

18  again, what am I missing that makes it not copyrightable but a

19  short musical phrase.

20          MR. ROSENFELD:  Well, sampling is just a name for

21  something that can or cannot be copyrightable depending on all

22  the circumstances, all the words, the two works viewed

23  together, and how much is taken.  And so it's possible that if

24  one were to sample a substantial part of the work and the

25  other work were identical or substantially similar, it could

1    be copyright infringement.  But when it's just a word or it's

2    just a phrase, if you listen to these two songs and you'll

3    see, the melodies, the harmonies, the rhythm --

4            THE COURT:  Oh, I'm sure they're all different.

5            MR. ROSENFELD:  -- are completely different.  All

6    the other --

7            THE COURT:  But that's not what sampling is about.

8    Sampling is taking a specific phrase and dropping it in your

9    own music.

10           MR. ROSENFELD:  Well, take a look at two of the

11   cases that -- the only two cases I think that plaintiffs have

12   cited in their letter that have to do with music are the

13   Bridgeport case in the Sixth Circuit and Light Music in --

14           THE COURT:  Good old Richard Bush.  He's set a lot

15   of precedent in the music business for plaintiffs.

16           MR. ROSENFELD:  Right.

17           THE COURT:  In the Bridgeport cases.

18           MR. ROSENFELD:  So in that case, that's a sampling

19   case.  Is a highly idiosyncratic arpeggio, not a chord but a

20   particular progression through a certain number of notes

21   that's played on the opening of a song.  And they cited it I

22   think for the proposition that that could be the basis for a

23   copyright claim.  But the district court concluded the sample

24   was so short it was de minimis, it didn't rise to the level of

25   a legal recognizable appropriation.  And that was affirmed.

6

1   And in the Southern District case, <u>Light Music v. Wonderland</u>

2   <u>Music</u> it's also very similar to this case in that the two

3   songs that issue both use the phrase

4   supercalifragilisticexpialidocious as a lyric.  And the Court

5   listens to the two songs and says there's no discernible

6   similarity here.  I don't care if they copied whatever that

7   is, ten syllables, a line that's ten syllables.  If you look

8   at the whole thing, this simply not substantially similar.  So

9   there's certainly no precedent that sampling is copyright

10  infringement.  It depends, as in any infringement case, on

11  looking at all the circumstances and the works as a whole.

12          THE COURT:  But in that case, why do we have an

13  issue as a matter for dismissal as opposed to a fact issue

14  that will be looking at the circumstances and the facts here

15  as a whole?

16          MR. ROSENFELD:  Because you're allowed to, Your

17  Honor, you're allowed to in a copyright infringement case look

18  at the two works before you in a case like this which are

19  incorporated into the complaint, referenced in the complaint.

20  We provided them to you.  And courts routinely decide

21  substantial similarity on the pleadings.

22          THE COURT:  All right.  And then the next one was

23  your claim that it's not original.  And I understand the

24  second amended complaint and the affidavits attached thereto

25  to be saying that the plaintiff claims essentially that he

1  originated the phrase and that the citations that defendants

2  have cited to in terms of the phrase being out there in the

3  public realm came after his supposed origination of the

4  phrase.  So again, that all sounds like a factual issue.  How

5  is this not going to be -- how is this not an issue that gets

6  beyond a motion to dismiss?

7          MR. ROSENFELD:  I mean first of all, the pleadings

8  aren't entirely clear on that point.  They do admit in the

9  pleadings and plaintiff's letter that he used phrasing from

10 the Jamaican Patwa and combined it with elements from the

11 English language.

12         THE COURT:  Right.

13         MR. ROSENFELD:  So he took something and changed it

14 and so in a sense it's alleging it to be a derivative work

15 which then they allege we took and changed further and

16 incorporated it into a completely different song.  So --

17         THE COURT:  Okay.  So I just want to make sure.  So

18 your contention will be that the phrasing existed prior to

19 plaintiff's origination if you will of his version of it?

20         MR. ROSENFELD:  Yes.

21         THE COURT:  Okay.

22         MR. ROSENFELD:  Yes.  And I would say that they've

23 said in their pleadings which even include affidavits as

24 exhibits, you know, this is a 12(b)(6) motion, we just have to

25 plead it.  Well, I would say that that's no longer the

8

1  standard after Iqbal and everything that came after it.  They

2  have to rise to a level of plausibility.  And we don't think

3  in this situation that they do originality.

4          THE COURT:  And then fair use, same thing.  Why is

5  this going to get kicked on a motion to dismiss as opposed to

6  making it an issue for summary judgment?

7          MR. ROSENFELD:  Fair use, again, is sometimes

8  decided on 12(b)(6) motions.  Here we would argue it should

9  be.  I can go through each of the factors if the Court wants,

10  but the --

11          THE COURT:  No, you don't need to.

12          MR. ROSENFELD:  -- the main point is -- the main

13  points are one, this is a completely transformative use and I

14  come back to one only has to listen to the songs to see how

15  differently they're using this language.  They allege we've

16  changed it a little bit but they also -- it's also very clear

17  just on the face of the songs that everything about the song

18  is different.  The melodies are different, the rhythms are

19  different, the messages of the song which we would say don't

20  go to substantial similarity, but they do go to the

21  transformativeness which is relevant for fair use.  The

22  messages of the song are completely different from the song --

23  one song that talks about subjugating women, we come first and

24  she comes second, you know, messages to that effect.  And the

25  second song, which talks sort of about girl power and we have

9

1  the power, we run things.

2      THE COURT:  Yes, I thought that was an interesting

3  argument about that because of course plaintiff makes an

4  argument these are the same thing but, you know, at a larger

5  level.  But that's again, a debate.

6      MR. ROSENFELD:  They make it on substantial

7  similarity but I would point out on that that the ideas of the

8  songs, the themes of the songs are not copyrightable and --

9      THE COURT:  No, no, but that's not being claimed as

10  far as I understand.

11      MR. ROSENFELD:  Okay.  I may have --

12      THE COURT:  This is not a -- this doesn't come

13  across to me as a blurred lines case.  This is more about a

14  specific phrase.  To me, it's more like a sampling case.

15      MR. ROSENFELD:  I mean I would also just point out

16  on the fair use that you're comparing not the line to the line

17  but the work to the work.

18      THE COURT:  Yes.

19      MR. ROSENFELD:  The amount taken in -- the amount

20  allegedly taken is a small part of the original work and a

21  small part of the infringing work and we think you can decide

22  that from the pleadings as well.

23      THE COURT:  But of course it seems to be pivotal to

24  the initial work from plaintiff, the title of the song, the

25  phrase appears 12 times.  And I understand that in the

1   defendant's song it plays much less of a role --

2             MR. ROSENFELD:  Right.

3             THE COURT:  -- which redounds to your benefit.  But

4   again, I'm seeing fact issues.

5             MR. ROSENFELD:  Fact issues, I hear what you're

6   saying, Judge, but I think in this case, again, it's all

7   before the Court on the record for this motion.  It's part of

8   the pleadings.  And I think if the works were closer, there

9   might be an issue.  These works are so incredibly dissimilar

10  in every way except for this one phrase of seven words, well

11  six words that they claim that we copied out of the seven.  We

12  changed one of them.

13            THE COURT:  But again, isn't --

14            MR. ROSENFELD:  That's not enough.

15            THE COURT:  In sampling though there is only one

16  portion that's claimed to be the same.  Isn't that true?

17            MR. ROSENFELD:  And that's just like Bridgeport and

18  that's just like other of the cases I mentioned.  That's not

19  enough.  It's de minimis.  It's not enough of the work to be

20  either protectable or original.  It's not enough to warrant a

21  finding of substantial similarity.  And if it is, we would

22  argue it's fair use which some of the sampling cases also go

23  to.

24            THE COURT:  Okay.  Thank you.  A couple of questions

25  for plaintiffs on the other issues.  So defendants put forth a

11

1    couple of issues that would narrow the case potentially and

2    therefore would inform the scope of discovery in some way.

3    And let me just start with the statute of limitations.  Why do

4    we not clearly have a cutoff for damages purpose prior to the

5    2015 date?

6              MS. SQUILLACE:  Judge, with regards to what this

7    circuit and the Supreme Court, the rule that it follows in

8    terms of the look back, plaintiffs would concede we are

9    constricted to damages that start from March 13, 2015 to

10   present date.

11             THE COURT:  Okay.  In that case, would we not need

12   discovery prior to that period at least on damages?  I could

13   see why originality, creation, et cetera.  But I assume not on

14   damages, right?

15             MS. SQUILLACE:  Judge, to the extent that because

16   this is a pivotal song in her repertoire, there's three songs

17   that Ms. Cyrus sings regardless of what album she currently

18   has out or what tour she currently is performing.  That's

19   Party in the USA; We Can't Stop, which is the song in question

20   here; and Wrecking Ball.  Including in her most recent album

21   release of Malibu she sings We Can't Stop to promote Malibu.

22   So to the extent that there may be some discovery that needs

23   to lead into what performances, concerts, single performances

24   and stuff from March 13, 2015 to present day because we do

25   know she still performs at the present date and that's why we

12

1   also sought -- while we haven't moved for an injunction yet,

2   we did seek injunctive relief because she continues to sing

3   and perform the song for monetary compensation.

4           THE COURT:  Right.

5           MS. SQUILLACE:  She released the DVD in March, I

6   believe it was the 23rd of 2015.  So certainly the sales and

7   the profits from that.  And with regards to counsel's

8   argument, worldwide profits and sales are relative here

9   because we're claiming an infringement here and an

10  infringement abroad.  She performed the song abroad, she sold

11  CDs and albums abroad.  So to the extent that discovery is

12  limited, yes, the three-year look back to March 13, 2015 to

13  present date.  To the extent that discovery may be needed to

14  give context to how she came to perform the song in such a

15  tour or such a performance in that time period, but there's

16  discovery that predates that time period to give context,

17  there may be, Judge.

18          THE COURT:  And let me just as defense it sounds

19  like we have an agreement on at least the statute of

20  limitations aspect, is that right?

21          MR. ROSENFELD:  We have an agreement it sounds like

22  on a three-year look back.

23          THE COURT:  Okay.  Good.  So that will not need to

24  be briefed in other words.

25          MS. SQUILLACE:  And Judge, I'm sorry, just to be

1   clear because you did say separate from discovery as to

2   originality and creation and access, you were just talking

3   about damages.

4           THE COURT:  Yes.  I didn't mean that there would be

5   no discovery prior to that time.  And you mentioned extra

6   territoriality and I know that's another basis that the

7   defendants have put forward.  Why would you be entitled to

8   recovery related to anything happening aboard?

9           MS. SQUILLACE:  Because, Judge, as held by this

10  Court in the southern district in the Armstrong v. Virgin

11  Records, only when a plaintiff is alleging solely

12  extraterritorial infringement does that now become a

13  restriction here in this jurisdiction.  We're claiming

14  infringement here, we're claiming unjust enrichment from that

15  infringement here, and we're claiming infringement abroad for

16  which the defendants have been unjustly enriched here in this

17  jurisdiction.  So we believe that in fact the worldwide

18  extraterritorial jurisdiction of the foreign sales profits and

19  all of that come into play in terms of the damages.

20          THE COURT:  Okay.  What do defendants think about

21  that?

22          MR. ROSENFELD:  I disagree with that articulation of

23  the law.  It's not just that there have to be alleged

24  infringements in the US and elsewhere in the world.  The only

25  way in which non-US infringement can at all be relevant if

14

1   there is some predicate act to that infringement that happens

2   in the US and then the infringement continues abroad.  And

3   that's not the case here.  We're talking about separate

4   performances, separate distributions of recordings, downloads,

5   and all the different ways that music gets distributed.  So

6   the extraterritoriality really is a bar to damages and should

7   be a bar to discovery in this case.

8        THE COURT:  No need to argue further on that.

9        MS. SQUILLACE:  Okay.

10        THE COURT:  There's clear disagreement.  And then on

11   the question of statutory damages and attorneys fees, I assume

12   the plaintiffs agree on that or no?

13        MS. SQUILLACE:  Judge, with respect to damages,

14   statutory damages that predates the copyright certification,

15   because the infringement has been ongoing as she still

16   performs the song, there has been infringement subsequent to

17   the copyright registration.  So our argument is that the

18   statutory damages come into play again for that time period --

19        THE COURT:  I see.

20        MS. SQUILLACE:  -- of post copyright certification

21   infringement.

22        THE COURT:  Sounds like a reasonable argument.  No?

23        MR. ROSENFELD:  No.

24        THE COURT:  No, it's reasonable but you don't agree.

25        MR. ROSENFELD:  Eminently reasonable --

15

1          MS. SQUILLACE:  No offense, Mr. Rosenfeld.  No

2     offense.

3          MR. ROSENFELD:  Eminently reasonable but we differ

4     the law.  The statutory requirement is that the infringement -

5     - you know, that the registration happen before the

6     infringement except for the three-month period which we are

7     not dealing with here.  As long as you have registration, more

8     than three months passes, and then there's alleged

9     infringement, you don't get the statutory damages, you don't

10     get the attorneys fees.  It's all one continuing course of

11     alleged infringement, if the song is infringing, and there is

12     no entitlement to statutory damages or attorneys fees under

13     the Copyright Act.

14          THE COURT:  All right.  So I'm obviously going to

15     allow a motion to be filed.  I'm not going to stop that.  And

16     one thing we should talk about is a briefing schedule.  And I

17     guess it will be up to the defendants in terms of the scope of

18     what you want to include of the issues you've identified based

19     on our discussion.  Have you all discussed a briefing schedule

20     at all?

21          MS. SQUILLACE:  No, we haven't, Judge, because I

22     think also defense counsel, as we indicated in the case

23     management plan, while Your Honor ordered the plan and we of

24     course as plaintiff would like discovery to go forward, they

25     indicated they intended to apply orally for a stay of the

16

1  discovery.

2          THE COURT:  Right.  And so my question to you,

3  plaintiff, is why shouldn't it be stayed?

4          MS. SQUILLACE:  Judge, we believe that as Your Honor

5  correctly pointed out these issues are not for a 12(b)(6).

6  All of the cases except for one cited by the defendants in a

7  pre-motion request letter are all after all of the discovery,

8  are all summary judgment motions none of which except for the

9  Kanye West, McDonald v. Kanye West -- that was the only case

10  that was a 12(b)(6) motion, and they cited that case for an

11  entirely different proposition, not on the Fair Use Act that

12  can be decided on the 12(b)(6) but as to a different issue.

13  Plaintiff sufficiently plead detailed, plausible, specific

14  facts, when he created it in 1981, how he created it, that he

15  authored it.  Defendants say that he claims to have

16  popularized it.  Nowhere in the complaint do we claim that he

17  popularized it.  He created it.  We have three affidavits

18  sworn to by Jamaican from the country in which the language

19  comes in that profession that knew him in that time of 1981

20  that affirm under penalties of perjury that he created it.  If

21  it became popular after him, he still authored that work and

22  the defendant's infringement is still actionable even if there

23  are other uses of that work.  The originality of it and why we

24  specifically put the side-by-side comparison on Page 2 of our

25  letters is that we are not looking at the entire song.  One is

1    reggae, one is dance hall pop, but they're both dance music.

2    They're the same market.  The entire songs do not have to be

3    substantially similar.  If the short phrases which are

4    protectable, the Second Circuit has repeatedly held that short

5    phrases, whether it's in music or a book or an article, short

6    phrases are protectable.  We have been in the <u>Salinger v.</u>

7    <u>Random House</u> case in 1987.  They are protectable when there is

8    a sufficient degree of creativity as to sequence of thoughts,

9    choice of words, emphasis and arrangements of words.  And that

10   is exactly what we have here.  When Mr. May created this, he

11   used Jamaican Patwa, which the part of the Patwa that he uses

12   is the incorrect grammar.  That's the Patwa.  That is why the

13   phrase "we run things, things no run we," that's where he

14   creates it and originalizes it with his creativity by mixing

15   the English language with the incorrect grammatical sequence

16   of the Patwa.  They in their song have, "we run things, things

17   don't run we."  They change one word.  And Your Honor, that's

18   not fair use because it's the exact same meaning.  The word

19   "no", "don't", "does not" or "not" all mean the same.  When we

20   establish an alleged theme, we're not saying they copied the

21   theme of the song.  The theme becomes relevant because when

22   they want to argue fair use, the theme is not changed.  The

23   meaning of the phrase has not changed.  While Miley Cyrus may

24   sing about running your own life, if you want to do Miley, do

25   Miley.  Mr. May is not talking about controlling your own

18

1  destiny by doing drugs.  Ms. Cyrus is.  He is not.  But the

2  theme is the same, control your own life, control your own

3  situation, don't let others or the world control you.  It's

4  the same theme.  And that's why we talk about the theme

5  because when they one to argue fair use, changing "no" to

6  "don't" --

7          THE COURT:  All right.  So you're arguing merits and

8  obviously trying to say basically that the bases for their

9  motion have no merits and so we might as well go forward with

10 discovery because they are not going to get out on a

11 dispositive issue on 12(b)(6).  Of course if they did succeed,

12 and I'm not saying they would by any means, that presumably

13 would get rid of the case potentially.  Agreed?

14         MS. SQUILLACE:  If they were to win on the 12(b)(6),

15 Judge?

16         THE COURT:  Yes.  On one of the grounds that either

17 it's unprotectable, it's fair use, or not original.

18         MS. SQUILLACE:  Well frankly, other than the fair

19 use, none of the others are 12(b)(6) issues, Judge.  They are

20 the fact issues that --

21         THE COURT:  No, I understand.  But I'm saying if

22 there was a situation where they moved on that ground and they

23 succeeded on their 12(b)(6) motion, the case would be over

24 essentially subject to appeal.  And that suggests that

25 discovery could be a wasted effort.  I don't really form a

1    judgment right now as to the merits of the motion and there

2    are arguments clearly on both sides.  It might need

3    development in terms of whether they have legs or not.  But

4    I'm also leery of starting to get into discovery.  By the time

5    there's a decision, you'll be very far in discovery I would

6    think.  Is there -- I don't -- there's no harm, is there, in

7    terms of Ms. Cyrus's continued performance of the song in that

8    that would essentially add to whatever damages you would

9    otherwise get.  Is that fair?

10          MS. SQUILLACE:  Correct, Judge, which is why we

11   haven't sought the injunctive relief as of the moment.  It

12   would kind of be like shooting him in the foot --

13          THE COURT:  Right.

14          MS. SQUILLACE:  -- to limit the damages and stop the

15   damages now.

16          THE COURT:  Okay.  So with that, I am inclined to

17   stay discovery pending the motion.  One thing that I will make

18   an effort -- no I can't, because it's an R&R.  I'll be

19   deciding it and doing a report and recommendation to Judge

20   Kaplan unless the parties at some point want to consent to me

21   for all purposes.  Your choice.  But what I was thinking was I

22   was going to issue -- I could see issuing a ruling that tells

23   you what I'm going to do before I write the opinion so that if

24   discovery -- if the case were to keep going discovery could go

25   forward.  But I can't do that where there's an R&R to Judge

1  Kaplan.  But at this time I am going to stay discovery and

2  allow the motions to be filed.

3          What shall we do in terms of -- well actually,

4  before I get there, just a note on the discovery schedule you

5  had proposed, my reaction, and maybe it would be different and

6  we don't need to discuss it now but we can discuss it if and

7  when we need to proceed with it, my initial reaction was that

8  it was kind of a long period for fact discovery and expert

9  discovery, but we can talk about that at another time.

10         So in terms of briefing, defendants, when do you

11 think you can get your papers filed?

12         MR. ROSENFELD:  Your Honor, I think we could do it

13 in 30 days if that would work for the Court.

14         THE COURT:  And plaintiffs, would you be able to

15 respond within 30 days?

16         MS. SQUILLACE:  Yes, Judge.

17         THE COURT:  Okay.  And then two weeks for a reply,

18 okay?

19         MR. ROSENFELD:  Two weeks for a reply.  I would need

20 to look at a calendar to know if that gets into -- I don't

21 think it does get into any holidays, Jewish holidays.

22         THE COURT:  Oh, we can work around it, we can work

23 around a particular day.

24         MR. ROSENFELD:  But yeah, two weeks is fine.

25         THE COURT:  Let's see.  Today is the 23rd, so 30 days

21

1    is going to be the 22nd of August which is a Wednesday.  Then

2    two weeks after that is the 5th of September but I don't have

3    holidays on here so I can't tell you.

4             MR. ROSENFELD:  That should be fine.

5             THE COURT:  Okay.

6             MS. SQUILLACE:  Well Judge, I'm sorry, the August

7    22nd would be for the defendants to file.  We get 30 days

8    thereafter?

9             THE COURT:  Yes.

10            MS. SQUILLACE:  So then it's two weeks after our --

11            THE COURT:  Correct.

12            MS. SQUILLACE:  Right.

13            THE COURT:  For them to reply.

14            MS. SQUILLACE:  So that's an October date, Judge.

15            MR. ROSENFELD:  So our reply would be in October

16            THE COURT:  Oh, I'm sorry.  Correct.  Yes, you're

17   correct.

18            MR. ROSENFELD:  Which I don't have the holidays in

19   front of me but I'm sure we can work around that and let the

20   judge know if --

21            THE COURT:  Yes.  I mean we'll definitely -- if it

22   presents any problem, let me -- talk with your counterpart on

23   the other side, see if you can agree, and then just inform the

24   Court and I can so order --

25            MR. ROSENFELD:  Absolutely.  And counsel's been --

22

1          THE COURT:  -- whatever it is.

2          MR. ROSENFELD:  -- it's been a very cooperative

3    relationship so far, so --

4          THE COURT:  That's great and --

5          MR. ROSENFELD:  -- it will not be a problem.

6          THE COURT:  You know, that makes litigation a lot

7    more enjoyable.  And I litigated for 27 years before I came to

8    the bench and my most favorite cases are the ones where my

9    adversary and I got along famously.

10          MR. ROSENFELD:  Absolutely.

11          THE COURT:  You can disagree but be professional

12   with each other and have fun while you're doing hard work.

13   Right?  All right.  Any questions from anybody at this point?

14          MS. SQUILLACE:  No, Your Honor.

15          MR. ROSENFELD:  No.  No, thanks.

16          THE COURT:  Am I forgetting anything Dave?  No.  All

17   right.  So with that, I will issue a scheduling order that has

18   the dates for briefing.  And we're adjourned.

19          MS. SQUILLACE:  Thank you, Your Honor.

20          MR. ROSENFELD:  Thank you very much.

21          MS. GREEN:  Thank you, Your Honor.

22          MS. SQUILLACE:  Thank you.

23                    *  *  *  *  *  *

24

25

23

1      I certify that the foregoing is a court transcript from

2   an electronic sound recording of the proceedings in the above-

3   entitled matter.

4

5                                    _Mary Greco_
                                     _____

6                                       Mary Greco

7   Dated:   August 22, 2018

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25