UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
MICHAEL MAY a.k.a. FLOURGON,

                 Plaintiff,

          - against -

SONY MUSIC ENTERTAINMENT; DESTINY
HOPE CYRUS a.k.a. MILEY RAY CYRUS;
SMILEY MILEY, INC.; THERON THOMAS;
TIMOTHY TOMAS; MICHAEL LEN
WILLIAMS II a.k.a. MIKE WILL MADE IT/
MIKE WILL; and LARRY RUDOLPH,

                 Defendants.
---------------------------------------------------------------- x

Case No. 1:18-cv-02238 (LAK) (RWL)

Hon. Robert W. Lehrburger

# DEFENDANTS' REPLY MEMORANDUM
## IN FURTHER SUPPORT OF MOTION TO DISMISS

It is difficult for defendants to parse the arguments that plaintiff offers in opposition to the instant motion to dismiss. One reason for that difficulty is that plaintiff repeatedly conflates the applicable legal principles in an effort to obscure the insufficiency of his copyright infringement claim. Then, too, plaintiff totally ignores other applicable legal standards that are apparently not to his liking. He mischaracterizes some of defendants' arguments in a seeming effort to shoot down straw men. And he simply ignores the fact that he holds a registration for, and is suing for infringement of, an entire musical composition, not just one phrase in the lyrics of that composition. The resultant haze that these tactics create cannot obscure one critical fact: plaintiff's entire claim is predicated on a seven-word phrase that he admittedly adapted from Jamaican patois (the "Phrase"). Nor could that haze obscure the conclusion that the Phrase alone is insufficient to ground a claim for infringement of the entire musical composition. And the Phrase is—at best—a derivative entitled to only thin protection under copyright law; more

accurately, it is a rote transliteration that is not entitled to any protection at all. In short, plaintiff's opposition does nothing to rebut the unassailable conclusions that plaintiff's *We Run Things* (the "Song" or "*Run*") and defendants' *We Can't Stop* ("*Stop*") are not substantially similar, much less strikingly similar, or that any copying of protectable elements by defendants is fair use as a matter of law.

## I. PLAINTIFF EFFECTIVELY CONCEDES HIS CLAIM IS PREMISED ENTIRELY ON AN UNPROTECTABLE PHRASE

From his opening sentence, plaintiff makes clear that his claim for infringement rests solely on the alleged infringement of the phrase "We run things. Things no run we." (the "Phrase"): "Plaintiff's action is for copyright infringement against the Defendants for unlawfully using and copying Plaintiff's unique, original and creative lyrics/lyrical phrase that he created/authored in 1981, to wit: 'We run things. Things no run we' in Defendants' 'We Can't Stop.'" Opp. at 1. Although it is far from clear from plaintiff's Opposition what he claims to have taken from the Jamaican patois and what he claims to have created, plaintiff confirms repeatedly that the Phrase is based on the Jamaican patois. *Id.* at 2 ("a critical lyrical distinction" is "Plaintiff's intentional and purposeful formation of his lyrics/lyrical phrases which *features incorrect grammar/grammatically incorrect word sequence of Jamaican Patois* which he then mixes with the English language to create and author his original, unique and creative lyrics/lyrical phrase") (emphasis added); *id.* ("These lyrics/lyrical phrase are Plaintiff's own unique phraseology, meaning and linguistic combinations *as he uses part of Jamaican Patois* to uniquely and creatively mix same with the English language.") (emphasis added). *See also id.* at 16, 18. While admitting that the Phrase is based on the Jamaican patois, plaintiff simultaneously claims that he independently created it in 1981, in the course of arguing that later uses of the

Phrase are irrelevant to his alleged coinage of it.[1]  Opp. at 21.  Curiously, on the very next page, he admits that the Phrase was "in the public domain" prior to defendants' alleged copying of it (*id.* at 22); if so, defendants cannot have infringed plaintiff's Song by their use of a variant of the Phrase.

These various admissions only serve to confirm that, at best, plaintiff's Phrase (as opposed to his Song) is a derivative, entitled to protection only if and to the extent plaintiff has contributed sufficient, non-trivial, original authorship to render the new work independently copyrightable,[2] and then only to the extent of his particular authorship.  *See* Mot. at 10-11.  Plaintiff's claimed "original" contribution to the Phrase under each of his various characterizations of it, is not sufficiently original to meet that standard.[3]  That minimal "contribution" can be described most accurately as an unprotectable transliteration, as it fits, quite literally, that dictionary definition.  *See* Transliterate, Merriam-Webster ("to represent or spell in the characters of another alphabet"); Transliterate, Cambridge Dictionary ("to write words using a different alphabet"); Mot. at 11.

---

[1] Plaintiff maintains that defendants have failed to show that they copied from the post-1981 works that defendants reference (Mot. at 10 n.3) rather than from plaintiff's Song (Opp. at 23), but this argument is addressed to access—a point that defendants have already conceded for purposes of this motion only.  Whether or not defendants have established pre-1981 usage is of no moment because plaintiff holds a copyright in his 1988 Song, not his alleged 1981 coinage of the Phrase, so the pre-1988 references are admissible to show that the patois phrase was in common usage prior to plaintiff's registration.

[2] Plaintiff apparently believes that defendants' argument is that *defendants'* work is derivative. *See* Opp. at 12 ("Defendants' taking here is not *de minimis* and is not a protected derivative or transformative work as their changing of the word 'no' to the word 'don't' is not enough of a variation to constitute fair use."); *id.* at 14 ("Defendants' changing of merely one word, to wit: changing 'no' to 'don't' is not protectable, is not a lawful deviation/derivative work . . . .").  Whether or not the Phrase as used in *Stop* is derivative, it is the nature of ***plaintiff's*** Phrase that is in issue on this motion.  *See* Mot. at 9-13.

[3] Plaintiff adds a third line to the Phrase which is not part of it (Opp., chart at 3), but comparison of this third line in the two songs reveals they are not remotely similar.

Third, even if plaintiff had been the original creator of the Phrase, the Phrase is still no different from the many short phrases courts have held over the years lack sufficient originality to be protectable. *See* Mot. at 8-9; *see also Peters v. West*, 776 F. Supp. 2d 742, 750 (N.D. Ill. 2011), *aff'd*, 692 F.3d 629 (7th Cir. 2012) (finding "couldn't wait no longer" unprotectable "short phrase expressing impatience in trite and clichéd language"); *Prunty v. Vivendi*, 130 F. Supp. 3d 385, 390 (D.D.C. 2015) (finding "neither the song title 'The Keys to the Kingdom' nor the phrase 'keys to the kingdom' is copyrightable material"). All of the cases plaintiff cites involve works with a far higher level of originality than exists here. *See* Opp. at 23 (citing *Salinger v. Random House, Inc.*, 811 F.2d 90, 98 (2d Cir. 1987) ("In almost all of those instances where the quoted or paraphrased passages from Salinger's letters contain an 'ordinary' phrase, the passage as a whole displays a sufficient degree of creativity as to sequence of thoughts, choice of words, emphasis, and arrangement to satisfy the minimal threshold of required creativity."); *Mattel, Inc. v. Goldberger Doll Mfg. Co.*, 365 F.3d 133, 135 (2d Cir. 2004) (facial features of Barbie dolls); *Rogers v. Koons*, 960 F.2d 301, 304, 307 (2d Cir. 1992) (original studio photograph of puppies and their owners); *Fischer v. Forrest*, No. 14 Civ. 1304 PAE, 2015 WL 195822, at *5 (S.D.N.Y. Jan. 13, 2015) ("66–word passage that includes a unique combination of descriptive terms, carefully phrased assurances, and an idiosyncratic joke"); *Life Music, Inc. v. Wonderland Music Co.*, 241 F. Supp. 653, 654 (S.D.N.Y. 1965) (made-up phrase "SUPERCALAFAJALISTICKESPEEALADOJUS"); *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 796 (6th Cir. 2005) (sampling of an arpeggiated chord played rapidly and in a way that "produce[d] a high-pitched, whirling sound that captures the listener's attention and creates anticipation of what is to follow")).

For all of these reasons and as previously demonstrated, the Phrase is not sufficiently original to be protectable under copyright law.

## II. PLAINTIFF DOES NOTHING TO REBUT THE CONCLUSIONS THAT *STOP* IS NOT SUBSTANTIALLY, MUCH LESS STRIKINGLY, SIMILAR TO *RUN* OR CONSTITUTES A FAIR USE

Plaintiff's Opposition conflates standards under the substantial similarity, striking similarity, fair use, and derivative work doctrines. *See, e.g.*, Opp. at 12 ("Defendants' taking here is not *de minimis* and is not a protected derivative or transformative work as their changing of the word 'no' to the word 'don't' is not enough of a variation to constitute fair use."); *id.* at 10 ("Defendants' lyrics/lyrical phrase in 'We Can't Stop' are *substantially and strikingly similar* to Plaintiff's protected lyrics/lyrical phrase") (emphasis added). *See also id.* at 12, 13. We separate out these issues below, demonstrating that even if the Phrase were protectable, *Stop* is not infringing as a matter of law.

### A. There Is Neither Striking Nor Substantial Similarity

Plaintiff's efforts to conflate the concepts of striking and substantial similarity notwithstanding, there is no doubt that the works at issue do not meet either standard. As the very cases plaintiff provides establish, two works are strikingly similar *only if* they are so "similar as to preclude the possibility of independent creation [such that] copying may be proved without a showing of access." *Mowry v. Viacom Int'l, Inc.*, No. 03 Civ.3090(AJP), 2005 WL 1793773, at *9 (S.D.N.Y. July 29, 2005) (citation omitted). Plaintiff's admissions that: (i) the Phrase is the only similarity in lyrics in the two songs; (ii) there is no similarity in the musical composition of them; (iii) defendants have not used the exact Phrase; and (iv) the Phrase is derived at least in part from the Jamaican patois which could have been an independent source for both songs, defeat any claim of striking similarity.

5

That plaintiff has not even attempted to compare the protectable elements of the songs themselves to establish the lesser substantial similarity standard under the more discerning observer test (Mot. at 12-13) (a test which plaintiff simply ignores), is hardly surprising, as he simply cannot show, and has not even alleged, any similarity at all beyond the Phrase. The applicable standard is clear: to "show that the copying amounts to an improper or unlawful appropriation by demonstrating that substantial similarities relate to *protectable material*." Mot. at 8 (citing *Edwards v. Raymond*, 22 F. Supp. 3d 293, 297 (S.D.N.Y. 2014) (citation omitted)).

Jettisoning the mandated analysis, plaintiff relies exclusively on the Phrase and a misleading characterization of the respective themes of the songs, ignoring all of the other elements that could legitimately be the subject of copyright protection and are quite different in the two songs. Plaintiff then generalizes the themes to an impermissible extent, characterizing both songs as about "self-governance, self-rule and self-control." Opp. at 5; *see also id.* at 17. In fact, the themes of the songs, readily discernable from their lyrics, stand in sharp contrast one to the other. Plaintiff's work extols the ability to dominate others, particularly women. *See* Mot. Ex. B (Plaintiff's lyrics) ("We rule girl, girl no rule we / That's a fi girl, dem haffi respect we); *id.* ("But if a girl love me, that's a different fashion . . . Jahman she would haffi know seh mi a di man / We come first and she come second"). Defendants' song, in contrast, celebrates female empowerment, encourages self-acceptance, and embraces personal liberty and sexual freedom. *See* SAC Ex. D ("To my homegirls here with the big butts / Shaking it like we at a strip club / Remember only God can judge us / Forget the haters, 'cause somebody loves ya"); ("It's our party we can love who we want / We can kiss who we want / We can see who we want"). Indeed, it is difficult to imagine that the narrator of plaintiff's song would tolerate a woman who comports herself like one of the women celebrated in defendants' work!

Beyond the fact that neither the Phrase in this case, nor theme in general, is protectable under copyright law, it is plaintiff's Song, not just the Phrase in it, which forms the parameters of the substantial similarity analysis in this case.  Plaintiff is just wrong in arguing that "the entire two songs by Plaintiff and Defendants need not be compared to determine whether an infringement has occurred . . . ."  Opp. at 24.  That not only ignores the applicable law, it also ignores his copyright registration which is for the composition of the Song.

### B. The YouTube Mashup Must Be Excluded

Not in the SAC, nor in his opposition to defendants' pre-motion letter, nor in opposition to this motion, does plaintiff even claim that there is anything other than the Phrase and the themes that are similar in the two songs.  All he offers, without characterization, authentication, or foundation, is reference to a YouTube video purportedly juxtaposing the two songs at issue.  *See* Opp. Ex. B; Opp. at 3, 12, 13, 16, 17, 18, 24.  This Court must disregard that video for several reasons.

First, this video is not the type of fact or evidence that may be considered on a 12(b)(6) motion.  "When determining the sufficiency of plaintiff['s] claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in [the] complaint ..., documents attached to the complaint as an exhibit or incorporated in it by reference ..., matters of which judicial notice may be taken ..., or documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied in bringing suit," as well as documents "integral to the complaint."  *Adams v. Crystal City Marriott Hotel*, No. 02 Civ.10258 PKL, 2004 WL 744489, at *3 (S.D.N.Y. Apr. 6, 2004) (citations and internal quotation marks omitted).  This video is far from "integral" to the SAC and it is not something that can be judicially noticed as a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  *See* FRCP 201.

7

Second, plaintiff does not even claim that this video is an accurate recording of either work at issue. It appears to be a mashup, posted on YouTube by an unidentified "DJ Spoogy," which edits both works and mixes and matches pieces of each work and blends them to create a completely new and different recording, not a "side by side" comparison of the two works in their original form, as plaintiff mistakenly claims (Opp. at 3, 12-13, 16-17).

Third, if plaintiff seeks to offer this video as expert or lay opinion testimony relevant to the substantial similarity analysis, he must establish, but has not even tried to establish, a foundation for doing so. *See* FRE 701 (foundation requirements for lay opinion testimony); FRE 702 (foundation requirements for expert opinion testimony).

Because there is neither allegation nor evidence to support plaintiff's claim of any form of actionable similarity, the SAC must be dismissed.

### C. Plaintiff's Fair Use Analysis Ignores the Scope of His Copyright Protection

Plaintiff's conflation of copyright protection for the Song with copyright protection for the Phrase also permeates his fair use analysis. Arguing that defendants' work is not transformative, plaintiff focuses exclusively on the Phrase, claiming that "the only change Defendants made to plaintiff's original lyrics was changing one (1) small word—changing Plaintiff's word 'no' to Defendants' word 'don't.'" Opp. at 16. While courts look at the extent to which the part of plaintiff's work taken by defendant has been transformed, whether defendant transformed plaintiff's copyrighted work as a whole is also relevant to the analysis. As discussed *supra* at 6, defendants use the Phrase in *Stop* to convey a contrasting and very different overall message than plaintiff's use conveys in *Run* (female empowerment vs. male domination).

This same tunnel vision approach permeates plaintiff's analysis of the remaining factors. In examining the nature of his work, he focuses exclusively on the Phrase even though the very case he cites makes it clear that the point of comparison is the songs as a whole. *See Campbell v.*

*Acuff-Rose Music, Inc.*, 510 U.S. 569, 586 (1994) (noting second factor "calls for recognition that some works are closer to the core of intended copyright protection than others").  Likewise, plaintiff acknowledges that defendants did not copy the Phrase word-for-word (Opp. at 18-19), arguing at various turns that they copied the Phrase "exactly," "nearly exactly," "verbatim," or "nearly verbatim" (*see, e.g.*, Opp. at 18, 17, 11); regardless of that characterization, it is the amount and substantiality of the taking from his Song that controls, not how much of the Phrase has been taken.  And finally, it is difficult to imagine how defendants' use of the Phrase could impact even a theoretical actual or potential market for plaintiff's Song, even under plaintiff's theory that very different genres of music all "share a targeted audience and market" (Opp. at 19).  *See also* Mot. at 18-20.

For these reasons, plaintiff cannot create a material issue of fact on the fair use defense.

**III.   THE CONTINUING INFRINGEMENT THEORY DOES NOT SALVAGE PLAINTIFF'S REQUEST FOR STATUTORY DAMAGES**

It is clear that plaintiff cannot recover statutory damages because the alleged infringement began in 2013, four years before plaintiff registered the copyright in *Run*.  Mot. at 21-22.  Plaintiff attempts to circumvent this absolute bar by relying on a theory of continuing infringement.  *See* Opp. at 25 ("As for statutory damages, Plaintiff is entitled to same . . . as the infringement continues to present date and continued after Plaintiff was issued his Certificate of Copyright Registration . . . .").  But in cases where, as here, plaintiff failed to register his copyright before the infringement began, "'Section 412 imposes a bright-line rule, barring the recovery of statutory damages for infringement occurring after registration if that infringement is part of an ongoing series of infringing acts and the first act occurred before registration.'"  *Steele v. Bell*, No. 11 Civ. 9343 (RA), 2014 WL 1979227, at *8 (S.D.N.Y. Mar. 28, 2014) (collecting cases) (quoting *U2 Home Entm't, Inc. v. Hong Wei Int'l Trading, Inc.*, No. 04 Civ. 6189 (JFK),

2008 WL 3906889, at *15 (S.D.N.Y. Aug. 21, 2008)). Courts have emphasized that "a bright line rule—precluding an award of statutory damages and attorney's fees when any infringement occurs before the effective date of copyright registration—is 'preferable' to requiring courts to consider, on a case-by-case basis, whether a series of infringements 'has stopped sufficiently such that the restart constitutes a new set of infringements.'" *Id.* at *9.[4]

## CONCLUSION

Based on the above and as previously demonstrated, because plaintiff cannot establish that defendants' *Stop* is substantially similar to any protectable elements of *Run,* or because plaintiff has not rebutted the argument that *Stop* constitute a fair use, the Court should dismiss plaintiff's complaint with prejudice or, in the alternative, dismiss plaintiff's claims for statutory damages, attorneys' fees, and for actual damages incurred and/or infringing profits earned more than three years prior to the filing of the complaint herein.

Dated: New York, New York  
       October 5, 2018

**DAVIS WRIGHT TREMAINE LLP**

*/s/ Marcia B. Paul*  
MarciaPaul@dwt.com  
JamesRosenfeld@dwt.com  
MeredithSantana@dwt.com  
1251 Avenue of the Americas, 21st Floor  
New York, NY 10020  
Tel: (212) 603-6427  
Fax: (212) 489-8340

*Attorneys for Defendants*

---

[4] For these same reasons, the discovery plaintiff claims is necessary (Opp. at 25) cannot salvage plaintiff's claim for statutory damages, as he does not even allege any "new" act of infringement beyond the recording and performance of *Stop* that could inflict damage of a different kind or nature.

10